**Thomas K. Coan, OSB #89173**
tom@tomcoan.com
Attorney at Law
1001 SW Fifth Ave., Suite 1400
Portland, OR  97204
(503) 221-8736

**Richard L. Wolf, OSB #873719**
richardlwolf@att.net
Attorney at Law
12940 NW Marina Way
Portland, OR 97231
(503) 384-0910

Attorneys for Defendant Erickson

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| UNITED STATES OF AMERICA, | ) | Case No. 3:18-cr-00319-5-JO |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE** |
| CHAD LEROY ERICKSON, | ) | |
| Defendant. | ) | |

Defendant, Chad Erickson, through his attorneys, Thomas Coan and Richard Wolf,

submits this memorandum in support of his pretrial release.

### I.  Introduction

Mr. Erickson is a 48-year-old Army veteran and life-long Oregon resident who has no

history of violent behavior, and he has never left the area except for time spent overseas while

serving in the Army during the Iraq war.  His family and friends all live in the Portland area,

and many of them have offered him their support. His plan is to live in Rainier, OR with his

**Page 1 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

stepfather and mother Jerry and Donna Weigant. There is a trailer in their yard that Mr.

Erickson has lived in before, and they would welcome his return.

Mr. Erickson has three misdemeanor convictions, all occurring since he returned home

from the service. On all of these cases, the courts have released Mr. Erickson on his own

recognizance or on conditions.

Mr. Erickson is a good candidate for release. He has no history of violence and it is

highly unlikely Mr. Erickson would flee. This case has a long history, as it was prosecuted in

state court for approximately two years before being indicted in federal court. If he was going

to threaten or harm anyone, or if he was going to flee, he would have done so during the two

years the case was prosecuted in state court.

The only issue that may raise a concern with the Court is Mr. Erickson's failures to

appear on prior cases. Mr. Erickson has memory issues, likely caused from an injury in Iraq or

from a motorcycle accident(s) or a combination thereof, and there were times when he lost

track of court hearings. On these occasions, OJIN records show that the courts always released

Mr. Erickson on his own recognizance or on conditions. To make sure he does not forget any

appearance in this case, Mr. Erickson's stepfather, Jerry Weigant, is willing to act as a

responsible third party to assure Mr. Erickson makes it to every court appearance, and is

willing to help him get to court or other appointments as he commutes to Portland five days a

week to drive a bus for Tri-met.

The charges in this case are very serious.  Despite that, the Bail Reform Act requires

release unless the Government proves Mr. Erickson is a flight risk or a danger to the

community. While none of the death-eligible defendants have yet been released in this case, Mr.

Erickson points the Court to a very similar case in the District of Nevada, *United States v.*

**Page 2 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

*Palafox*, 2:16-CR-00265 (D Nev), a case that mirrors this one, making almost the same charges against members of The Vagos, a motorcycle club which, like this case, is alleged to have committed murder and kidnapping in aid of racketeering. In *Palafox*, Chief Judge Gloria Navarro ordered the pretrial release of at least five of the individuals charged with death-eligible offenses in that case.

We believe the information at the hearing will show that Mr. Erickson is not a flight risk or a danger to the community and therefore he should be released pending trial in this case.

**II.  Background Information**

Mr. Erickson is a 48-year-old Army veteran who enlisted in the National Guard in 1989 while still in high school. In about 2003, when the United States got entangled in the war in Iraq, Mr. Erickson enlisted in the Army to serve full-time, which he did in 2003 and 2004, serving an 18-month tour of duty in Iraq. While on a patrol mission there, he suffered head, neck and shoulder injuries when an improvised explosive device detonated beneath his Humvee. The blast also caused hearing and memory problems. He returned home in about 2006 and remained in the National Guard until about 2011. He received an honorable discharge.

Other than his time in the service, Mr. Erickson has lived in Oregon his entire life. He was born Milwaukee and raised in SE Portland, and attended Marshal High School. He has lived in this area before and after serving in the Army. All of his family is here too. His mother and stepfather live in Rainier, Oregon, and he has two adult children that live in Milwaukie, Oregon. All his ties are here. Other than his time in the service, he has never left the country.

Mr. Erickson has a long history of employment. He worked in the heating and air conditioning trade for ten or more years prior to serving in Iraq, however his neck and shoulder injuries from the IED explosion blast in Iraq left him partially disabled so he was unable to

**Page 3 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

return to heating and air conditioning work. Since that time Mr. Erickson has worked in security for various nightclubs in the Portland area. To get these jobs, he was required to obtain a State Washington License to Carry a Concealed Pistol together with certification from the Oregon Department of Public Safety Standards and Training (DPSST) to provide private Armed/Unarmed Professional security services allowed him to carry a concealed firearm in Oregon. He applied for and received both. See Exhibit A.

Mr. Erickson has a relatively minor criminal history, including 3 misdemeanor convictions and a pending misdemeanor case in Columbia County. Mr. Erickson's convictions include the following: 2006 Reckless Driving in 2006; 2012 Unlawful Possession of a Firearm (UPF), and 2013 Failure to Appear (FTA). All of these convictions occurred after Mr. Erickson returned from his service in the Army, with the 2006 reckless driving matter occurring shortly after his return. The 2012 UPF was based on Mr. Erickson's mistaken belief that his Washington License to Carry a Concealed Pistol together with his Oregon DPSST license to provide private Armed/Unarmed Professional security services allowed him to carry a concealed firearm in Oregon. Clackamas County Circuit Court Judge Michael Wetzel disagreed and convicted him after a court trial. The 2013 FTA Failure to Appear conviction arose out of the UPF case. Mr. Erickson simply forgot about some of the hearings during the course of the case. Notably, OJIN records show that the Court always released him when he failed to appear, indicating that the Court did not consider him a flight risk.

Mr. Erickson's pending case in Columbia County, based on an incident that occurred in February 2017, charges him with DUII and Reckless Driving. He is presently out of custody on that charge based on a Conditional Release that prohibits him form possessing or using

**Page 4 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

intoxicants without a prescription and prohibits him from going to places where intoxicants are the chief item of sale. Exhibit B.

### III.    Procedural Background

The Superseding Indictment (ECF 81) alleges five charges against Mr. Erickson, including: (1) Racketeering Conspiracy, (2) Murder in Aid of Racketeering, (3) Kidnapping in Aid of Racketeering, Resulting in Death, (4) Kidnapping, Resulting in Death, and (5) Conspiracy to Commit Kidnapping, Resulting in Death. Mr. Erickson made his first appearance in court on February 6, 2019. Assistant Federal Public Defender Fidel Cassino-DuCloux represented Mr. Erickson at that appearance but he did not proceed with a detention hearing. Shortly after this, the Court appointed Mr. Wolf and Mr. Coan to represent Mr. Erickson. The detention matter was submitted to the Court on February 12, 2019 without a hearing so that Mr. Erickson could come up with a suitable release plan, and Magistrate Judge Russo entered an Order of Detention "without prejudice to further review by the court at a later date." (ECF 133).

### IV.    Legal Standards

The Bail Reform Act of 1984, 18 USC §§ 3141, et seq., requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. *United States v. Gebro,* 948 F.2d 1118, 1121 (9th Cir 1991); *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir 1985). Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in favor of release. *Gebro,* 948 F.2d at 1121; *Motamedi,* 767 F.2d at 1405. The Bail Reform Act requires release unless no combination of conditions can reasonably assure the appearance of the person and the safety of the community. 18 USC § 3142.

**Page 5 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

In determining whether to detain or release a defendant, the court is to consider (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community should the person be released. 18 USC § 3142(g).

On a motion for pretrial detention, the government bears the burden to show by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of other persons or the community. 18 U.S.C. § 3142(f)(2). Conversely, the government bears the burden to show by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance. *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985). In order to continue Mr. Erickson's detention, the Government must prove by clear and convincing evidence that he is a danger to the community, or it must prove by a preponderance of the evidence he is a flight risk. *Id. at* 1406.

**V.      The Rebuttable Presumption Favoring Pretrial Detention Should Not Apply**

In cases where there is probable cause to believe that the person detained has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, 21 USC §§ 801, et seq., or the Controlled Substances Import and Export Act, 21 USC §§ 951, et seq., the court is to begin its inquiry into the propriety of detention with a rebuttable presumption that no combination of conditions will reasonably assure the appearance of the person or the safety of the community. 18 USC § 3142(e). The indictment itself is sufficient to support a finding of probable cause. *United States v. Suppa,*

**Page 6 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

799 F.2d 115, 119 (3d Cir 1986); *United States v. Harris,* 732 F. Supp 1027, 1033 (ND Cal 1990).

In this case, this statutory presumption should not apply because, while the Superseding Indictment alleges Mr. Erickson was a member of an alleged racketeering enterprise, the Gypsy Joker Motorcycle Club (GJMC), and that one of the means the Club used to further its goals was to traffic methamphetamine and marijuana which is prohibited by the Controlled Substances Act, there is no allegation in the indictment connecting Mr. Erickson to any drug distribution activities. So, even if the GJMC is an illegal enterprise and that some of its members trafficked drugs to further the goals of the enterprise, there is no allegation that Mr. Erickson ever joined in or agreed to participate in that proscribed activity. Therefore, the statutory presumption that applies to drug offenses that carry maximum sentences of 10 years or more should not apply to Mr. Erickson.

The law on this point is not clear or resolved. Some courts that faced this issue bypassed it by applying the presumption based on other charges in the indictment that carried the presumption but not based on the racketeering charge. See, e.g., *United States v. Enix*, 209 F Supp 3d 557, 562-64 (WDNY 2016) (The Court does not reach a determination as to whether the RICO conspiracy charged against Mr. Enix creates a rebuttable presumption. The Government has expressed its view that the RICO conspiracy charge creates such a presumption because it involves alleged crimes of violence. However, the issue was not briefed by the parties and it is not dispositive to the Court's determination, since a rebuttable presumption is created by the other counts charged against Mr. Enix. *See United States v. Marino*, 396 F. App'x 728, 729 (2d Cir. 2010) (leaving unresolved the issue as to whether predicate acts attributed to alleged racketeering co-conspirators could support application of

**Page 7 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

rebuttable presumption in favor of detention as against defendant). *Cf. United States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002) ("The flaw in Gotti's first argument is that, in determining whether he has been charged with a crime of violence, we should consider only the predicate acts ascribed to him in the indictment (i.e., money laundering) and not the objectives and means of the RICO enterprise as a whole, as alleged through the predicate acts ascribed to all enterprise participants.").

Another court found that the Racketeering charge does not implicate the rebuttable presumption. *See, United States v. Valenzuela*, No. 10CR3044 WQH, 2010 US Dist LEXIS 93888, at *5-6 (SD Cal Sep. 8, 2010). In *Valenzuela*, a grand jury returned a one-count indictment charging Valenzuela and others with conspiring to conduct enterprise affairs through a pattern of racketeering activity, in violation of 18 U.S.C. 1962(d), alleging that Valenzuela was a crew member in a drug trafficking organization with the objective and purpose of importation and distribution of narcotics in the United States. The indictment further alleged that the DTO conducted extensive enforcement operations in the United States and Mexico in support of its drug business, including acts of assault, kidnaping and murder and that Valenzuela was tasked by the DTO with committing murder. At the detention hearing, the Government sought detention on the grounds that Valenzuela was a flight risk and a danger to the community. Defendant asserted there are conditions or combinations of conditions which could be set by the Court to assure his presence at future court appearances and the safety of the community. The United States Magistrate Judge concluded "There's no rebuttable presumption in this case," and found that conditions could be set that would satisfy him that the defendant will make his court appearances and comply with other conditions of pretrial release. *Id.at 5-6.*

**Page 8 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

Here, there is no allegation that Mr. Erickson ever participated in any drug dealing conspiracy. Therefore, the statutory presumption favoring detention should not apply.

**VI.    If the Court finds that presumption applies, it merely shifts the burden of production and not the burden of proof and persuasion.**

The statutory presumption merely works to shift the burden of production of evidence to the defendant. *United States v. Mesher,* 707 F. Supp 1224, 1225 (D Or 1989); *United States v. Moore,* 607 F. Supp 489, 497 (ND Cal 1985). The ultimate burden of persuasion remains on the government, *Mesher,* 707 F. Supp at 1225, and the burden placed on the defendant to rebut the presumption is small. *United States v. Dillon,* 938 F.2d 1412, 1416 (1st Cir 1991). The defendant need only produce "some credible evidence forming a basis for his contention that he will appear and not pose a threat to the community in order to rebut the presumption." *United States v. Thomas,* 667 F. Supp 727, 728 (D Or 1987); *Dillon,* 938 F.2d at 1416.

**Factors to Consider**

**1.    The nature and circumstances of the offense**

Mr. Erickson denies being part of any racketeering enterprise and denies participating in any criminal activities on behalf of the GJMC or any other alleged enterprise. That being said, he recognizes that the nature and circumstances of this offense are the most serious under the law.

While this offense is quite serious, the allegations against Mr. Erickson are very limited. Other than being named in the case caption, he is not named as a active participant until paragraph 67 on page 16 of the Superseding Indictment where it alleges that he and other members of the GJMC took a utility trailer from the front yard of Robert Huggins in June 2014. The Superseding Indictment further alleges in paragraphs 75 and 76 that in June 2015 Mr.

**Page 9 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

Erickson met with other members of the GJMC at an ARCO station in Woodland, WA and that

he participated in an assault and torture of Robert Huggins that resulted in his death. Other

paragraphs allege Mr. Erickson aided and abetted in the commission of the murder of Mr.

Huggins (paragraph 92), and that he aided and abetted in the kidnapping of Mr. Huggins

(paragraphs 94, 95 and 96). So, based on the allegations in the Superseding Indictment, Mr.

Erickson's alleged participation in a racketeering enterprise are based on two acts: taking a

utility trailer in 2014 and participating in a kidnapping and assault that resulted in death in June

2015.

     Mr. Erickson acknowledges the gravity of the offense and recognizes the allegations in

the Superseding Indictment set forth are quite serious, but he denies any participation in it.

Based on an indictment that covers conduct of many people over many years, the allegations

against Mr. Erickson indicate his role and participation was limited to two events on two days.

Despite this being a serious offense, Mr. Erickson's alleged involvement is very limited.

     **2.**       **The weight of the evidence against the person**

     This factor is given the least amount of weight, as defendants are presumed innocent.

Even so, the weight of the evidence against Mr. Erickson is rather weak. The allegations in the

indictment suggest he played a minor role and was not involved in any ongoing illegal

activities. Further, much of the evidence is based on the statements of a cooperating witness

whose motives, bias and interests make this information unreliable.

     **3.**       **The history and characteristics of the person**

     Mr. Erickson is a hard-working, patriotic citizen who gave himself fully to the support

of our country. After returning home from his service, he was involved in some misdemeanor

transgressions that are likely related to his service and injuries during the war in Iraq. While

**Page 10 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

still in high school he joined the Army National Guard and spent many weekends devoted to his service there. Meanwhile, he worked full time for many years in the heating and air conditioning trade. When the war in Iraq started, he enlisted in the Army and deployed for full time service. He did an 18-month tour of duty in Iraq and was injured when an IED exploded beneath his vehicle, causing injuries to his neck, shoulders and head. Due to the shoulder injury he could no longer work in the heating and air conditioning business, so he became a private security guard at nightclubs in the Portland area. He applied for and received his permit to carry a concealed weapon in Washington and he did the same for his DPSST authorization to work as a private armed or unarmed security person.

Mr. Erickson has life-long ties to the Portland area. His family and friend all live here, and he has not traveled outside the country except for during his service in the Army. His stepfather, daughter and friends will likely attend the detention hearing, and they will all tell the Court that Mr. Erickson is an honorable person who will do as the Court tells him. He has some memory problems, but other responsible adults are willing to assure that he attends any court appearances or meetings he may be required to attend.

4.      **The nature and seriousness of the danger to any person or the community should the person be released.**

There should be no concern for the danger to any person should Mr. Erickson be released. He has no history of violence, and if he was a potential threat to anyone, that threat would have materialized already. Prior to this case being prosecuted in Federal Court, it was prosecuted in Multnomah County Circuit Court for almost two years as a kidnapping and murder case against six defendants, not including Mr. Erickson. The State murder case did not charge Mr. Erickson, so while that case was being prosecuted, Mr. Erickson would out of

**Page 11 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

custody. If he posed a threat to anyone, that threat would have materialized and revealed itself during the prosecution of that case. It never happened, because Mr. Erickson is not a violent person.

The prosecution of the state murder case also shows that it is highly unlikely Mr. Erickson will flee. While he was not charged in State court, his name was mentioned frequently during the bail hearing. State prosecutors presented evidence showing a phone registered to Mr. Erickson was in the area of the Arco Station in Woodland, WA when other defendants in the case were converging there, and that his phone was in the area where the assault took place at about the time of the assault. The GJMC has regular, weekly meetings, so while Mr. Erickson did not attend the State bail hearing, he was aware that his name was raised on more than a few occasions. Even so, he did not flee and he did not threaten or attempt to threaten anyone.

**VII.    Conclusion**

We believe the evidence will show that Mr. Erickson is not a flight risk or a danger to the community. Accordingly, we ask the Court to release Mr. Erickson to live with his mother and stepfather in Rainier, OR. His stepfather will act as a responsible third party to assure Mr. Erickson makes all of his court appearances.

DATED this 26th day of March 2019.

   _s/ Thomas K. Coan_
   Thomas K. Coan, OSB 89173
   Attorney for Defendant

**Page 12 – MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

_Verified Correct Copy of Original 12/7/2015_



| License number | ☐ Original ☐ Renewal ☐ Late ☐ Replacement | | Expires | | |
|---|---|---|---|---|---|
| E 983636 | | | MO. 06 | DAY 27 | YR. 16 |

State of Washington
License to carry concealed pistol

| Last name | First | Middle |
|---|---|---|
| ERICKSON | CHAD | LEROY |

Residential street address
12105 SE MARKET

| City | State | Zip Code |
|---|---|---|
| PORTLAND | OR | 97216 |

| Driver license number or state ID | | Race |
|---|---|---|
| 5146649 | ORDL | W |

| Birthday | Sex | Height | Weight | Eyes | Hair |
|---|---|---|---|---|---|
| 08  18  70 | M | 5  09 | 230 | BRO | BRO |

SIGN ABOVE AND CARRY WITH YOU



EXHIBIT
WA permit
101

Exhibit A - 1

_ Verified Correct Copy of Original 12/7/2015_

**State of Oregon**
Department of
Public Safety Standards and Training
Private Security Provider PSID:<u>45743</u>
**Chad L. Erickson**
**Executive Manager** expires **1-06-2014**
**Armed/Unarmed Professional** expires **3-11-2013**
Pursuant to ORS 181.870 – 181.991

**EXHIBIT**
tabbies OR Permit
102
Exhibit A - 2

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**
**FOR THE COUNTY OF COLUMBIA**

FILED
STATE OF OREGON
COLUMBIA COUNTY COURT
DATE 09/13/17 AM/PN
TRIAL COURT ADMINISTRATOR
BY _Kae_

| | | |
|---|---|---|
| STATE OF OREGON, | ) | |
| Plaintiff, | ) | Case No(s). 17CR40980 |
| v | ) | |
| | ) | **RELEASE AGREEMENT** |
| Chad Leroy Erickson, | ) | ☐ Recognizance  ☒ Conditional Release |
| Defendant. | ) | ☐ In Custody No Contact Order |

Charge(s): DUII, Reckless Driving.

Security Amount $ _12,500_ set by ☒ Judge  ☐ Warrant  ☐ Schedule
☒ 10% Deposit $ _1,250_ ☐ 100% Deposit $_____, paid in cash at _____ .M.

☐ You shall have no contact with the victim(s) listed below while you are charged with a sex crime or a crime involving domestic violence, whether or not you remain in custody.

☒ You are being conditionally released by the court instead of remaining in custody on the charge(s) against you.

I, the undersigned defendant, in consideration of being released on recognizance/conditional release on the charge(s) in the above listed case(s), do hereby agree that I will obey all laws; I will appear in court as directed by the court; I will stay in contact and keep all appointments with my attorney if I have an attorney; I will at all times respond to the orders of the court; I will appear for trial and, if convicted, will appear for judgment; and I will obey all of the following conditions:

☐ I will not leave the state of ☐ Oregon ☐ _____ without authorization of the court; ☐ and if found outside this state I will waive extradition.
☐ I will maintain residence in the state of ☐ Oregon ☐ _____ and I will keep the court advised of any change in my residence or mailing address.
☐ I will have no contact, directly or indirectly, with the alleged victim(s): _____
    ☐ or his/her/their immediate family ☐ or the residence at: _____
    ☐ or with: _____
☐ I will not operate a motor vehicle without a valid driving license and current vehicle insurance.
☒ I will not possess or use intoxicants without a valid prescription; ☐ I will submit to urinalyses at the court's request.
☒ I will not go to places where intoxicants are the chief item of sale.
☐ I will reappear in courtroom _____ on _____, 20___, at _____ .M. and at all subsequently scheduled appearances as ordered by the court.
☐ I will report to the Columbia County Sheriff's Office by ☐ noon today ☐ other time/date ___, for photo and fingerprinting.
☐ I will comply with ☐ conditions of probation or post-prison supervision as previously ordered
    ☐ directives of the pretrial release program ☐ and report in person to the Department of Community Justice ☐ immediately upon release ☐ no later than_____ on the next business day.
☐ Other conditions of release: _____

I fully understand the conditions stated in this agreement (including any attachments) and agree to comply with those terms. I understand that this release agreement remains in effect until a judgment of conviction or dismissal is entered in this case, or the judge changes the conditions of release with a new release agreement. I understand that if I fail to comply with those terms, a warrant could be issued for my arrest and/or my driving privileges could be suspended; that the court has the discretion to modify or revoke this agreement and my release; that before security release refunds are made, unless otherwise ordered, the court will apply the deposit being held to all court ordered obligations owed by me on this or any other case, and, if refunded on completion of this case, 15% of the deposit will be kept for expenses if 10% was deposited; that any security deposit remaining after all financial obligations have been paid will be returned to the person shown by the receipt to have made the deposit. **I understand the refund will be reduced by the security release costs mentioned above, and by all amounts owed by me on this or any other case, including any past-due child support obligations.**

I fully understand that pursuant to ORS 136.040, ORS 161.566 and ORS 161.568, if the charge is a violation or a misdemeanor which is treated as a violation, the trial may be held in my absence and in the absence of my attorney, and if I am convicted, the court can impose a monetary judgment against me, including a fine up to the maximum statutory limit and restitution.

Resident Address: _____
Mailing Address (if different): _____

Phone No. (503) 939 43__
E-mail address: _____

_[signature]_
**Defendant's signature**

Subscribed and Sworn to before me **9/13/2018**

_[signature]_

**Ted E. Grove, Circuit Court Judge**

Exhibit B